No. 21,000.

ROBERTA R. PATTON, as Administratrix, etc., *Appellant*, v.
THE UNION TRACTION COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

1. TRIAL—*Cross-examination of Witness.* On the facts stated in the opinion it is held that there was no error in refusing to sustain an objection to a question on the ground that it was not proper cross-examination.

2. DEATH—*Contact with Electric Wires—Finding—Verdict.* In an action to recover damages for the death of plaintiff's husband caused by coming in contact with high-tension electric wires maintained by defendant in one of its waiting rooms, *held*, it was not error to refuse to set aside the verdict in favor of defendant because of a finding that at the time the deceased came in contact with the wires he was not in full control of his powers of locomotion.

3. SAME — *Contributory Negligence of Deceased — Instructions.* The court charged that if the deceased "failed on his part to exercise ordinary care, or in other words was guilty of contributory negligence in the premises and thereby contributed to his own death, then the plaintiff can not recover." *Held*, it was not error to fail to qualify the instruction by stating that the deceased was guilty of contributory negligence if he voluntarily or of his own free will failed to exercise ordinary care. It was for the jury to determine under all the circumstances shown in the evidence whether or not the deceased was in the exercise of ordinary care at the time of the accident.

4. SAME — *Trial — Instructions.* Requested instructions examined and *held*, that the court having given instructions which correctly defined the issues, it was not error to refuse to give other instructions which were merely cumulative.

Appeal from Montgomery district court; THOMAS J. FLAN-NELLY, judge. Opinion filed July 7, 1917. Affirmed.

*W. E. Ziegler*, of Coffeyville, for the appellant; *S. H. Piper*, of Independence, of counsel.

*John J. Jones*, of Chanute, and *Chester Stevens*, of Independence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff, as administratrix of the estate of her husband, sues to recover damages for his death caused by coming in contact with a high-tension wire in one of the stations of the defendant. The Union Traction Company oper-

Patton v. Traction Co.

ates an electric interurban railway between Independence and other points, and through the village of Jefferson, where it maintains a brick building in which is located its waiting room and ticket office. The building is 22 feet wide, east and west, 33 feet in length, north and south, the entrance doors being on the west side. The ticket window and a show case for cigars and confections are located in the north end of the waiting room. Near the east wall is located a rotary converter to receive the alternating current and transmit it to the trolley wire. The rotary occupies a floor space four or five feet square. South of the rotary and attached to the east wall is a switchboard for controlling the current. At the south end of the room stands a row of transformers, each five feet long, four feet wide and four feet high. The transformers are twenty-two inches apart, with a space of two feet between the south one and the wall. Three high-tension wires, each carrying 22,000 voltage, enter the building near the ceiling and are conducted down the south wall by insulators to a point just below the top of the transformers, where they pass horizontally out and into the transformers. The transformers are not dangerous; a person coming in contact with them sustains no injury or shock. In front of the switchboard is a railing ten or twelve feet long, three feet above the floor, one end of which is fastened to the east transformer, and from this railing hangs a sign: "Danger, Be Careful." In the cement floor of the waiting room directly in front of the north end of the row of transformers is a depression or groove eight inches deep, in front of which stands a bench two feet wide, one and one-half feet high and ten feet long. The deceased was fifty-six years of age and actively engaged in the oil and gas business. For several years prior to the accident which caused his death he had suffered from pernicious anemia, and at times there was uncertainty in his steps. A physician who was acquainted with his physical condition testified that Mr. Patton had some disturbance of sensation in the lower extremities which resulted in uncertainty of gait at times; that when he first started out his muscular movements were not under the control of the will; that it was only at times that he lost control of his locomotion, which was usually after sitting for some little time.

It was his custom to take the interurban car from Coffeyville

to Jefferson early in the morning and return in the evening. He was well acquainted with Mrs. Myers, the assistant station agent, and frequently while waiting at the station engaged in conversation with her.

On Friday, March 20, 1914, when he returned to take the train for home he sat down on the bench in front of the transformers, and a few minutes later Mrs. Myers discovered him lying on the floor between the two transformers that stood nearest the west wall, with his head to the west. She testified that in a couple of minutes he got up and sat on the bench until the car arrived, when he left for home. Mrs. Myers also testified that two or three days previous to this occurrence she had a conversation with the deceased in which she told him the voltage carried by the current on the high-tension wires and showed him where these high-tension wires came down the wall and entered the transformers. Her testimony is that the next day, Saturday, March 21, 1914, Mr. Patton came out on the interurban car, got off at the station and crossed the tracks, walked out in the public highway toward Jefferson, and then returned to the station for some purpose. He walked up to the ticket counter where Mrs. Myers stood and gave her a newspaper, and they had some conversation. He then laid his overcoat on the bench, walked around the end of the bench, put his hand on the middle transformer and stooped over as if to get a rubber overshoe that evidently had fallen from his foot the day before. The rubber lay under the north end of the middle transformer. Without taking it up he rose, stepped across the ditch, walked down between the west and the middle transformers until he came in contact with the high-tension wire behind the transformers. There was a flash, his head went back and then down, and he fell behind the transformers. The power was turned off, physicians were called, but it was found that life was extinct.

It was charged in the petition that defendant was negligent in maintaining in its waiting room uninsulated wires carrying such a high and dangerous voltage, and in failing to exercise the highest degree of care and caution to prevent people lawfully in the waiting room from coming in contact with them. The answer was a general denial, with a plea of contributory negligence. The jury returned a verdict for the

defendant and made a number of special findings.   Judgment
was rendered against plaintiff, and she appeals.

The first complaint of error is that incompetent testimony
was admitted.   Mrs. Myers was called as a witness for the
plaintiff, and on cross-examination she was asked if she ever
had any talk with the deceased concerning the high-tension
wires.   She answered that she had, and was asked what was
said in the conversation concerning the wires.   Over the ob-
jection of the plaintiff the court permitted her to relate the
conversation with the deceased concerning the location and
dangerous character of the wires and the high voltage carried
on them.   It is claimed that this was not proper cross-examina-
tion.   However, if the objection had been sustained, the de-
fendant, by making Mrs. Myers its witness, could have secured
the same testimony at the same time in the progress of the trial.
No leading questions were asked, and there is no force in the
claim that prejudice could have resulted from permitting her
to answer the questions on cross-examination.

Complaint is made of an instruction stating the rule to be
that if the deceased "failed on his part to exercise ordinary
care, or, in other words, was guilty of contributory negligence
in the premises, and thereby contributed to his own death, then
the plaintiff can not recover."   It is insisted the instruction
should have stated that "if the deceased voluntarily or of his
own free will failed to exercise ordinary care."   The instruc-
tion stated the rule correctly.   It was for the jury to determine,
under all the circumstances shown in the evidence, whether or
not the deceased was in the exercise of ordinary care at the
time of the accident.

There is a complaint that the court refused to give a number
of requested instructions, particularly instructions Nos. 7 and
10, which merely stated in other language the same rule of
law aptly stated by the court in the instructions given, that
"if the use of electricity by the defendant in the prosecution
of its business at the place where the injury occurred is shown
by the evidence to be a highly dangerous agency to life unless
exercised with great care, then to such extent the highest de-
gree of care in its supervision, management and use was re-
quired of the defendant at places where people had a right to
go, and had been in the habit of going and would likely continue

to go." The requested instructions were merely cumulative, and asked the court to state in different language the same proposition of law correctly given.

The jury answered the following special questions submitted at the request of plaintiff:

"Do you find from the testimony that the defendant in any manner guarded or protected the high-tension wires in its station at Jefferson? Answer. No.

"Do you find from the testimony that the high-tension wires could have been protected by running guard rails or lattice work from east to west immediately north of the transformers? Answer. Yes.

"Do you find from the testimony that there was anything to prevent. the defendant from safeguarding and protecting the high-tension wires by running a railing, lattice work, or other devices from east to west immediately in front of said transformers? Answer. No.

"Do you find from the testimony that at and in its station and waiting-room at Jefferson on the 21st day of March, 1914, and for a number of months prior thereto, the defendant kept for sale and sold chewing gum, peanuts and other similar articles? Answer. Yes.

"Do you find from the testimony that there was any sign or warning of danger kept or placed at or near the said high-tension wires? Answer. No.

"Do you find from the testimony that the sign 'Danger, be careful,' which was placed in front of the switch-board located in the east part of the waiting-room was a distance of about from 12 to 14 feet from the high-tension wires with which deceased came in contact? Answer. Yes."

Special questions submitted at the request of defendant were answered as follows:

"Did M. A. E. Patton, deceased, and Mrs. Myers, have a conversation in the substation at Jefferson, Kansas, just a few days before the accident on March 21st, 1914, concerning the high-tension wires, connected with the transformers? Answer. Yes.

"Did Mrs. Myers during said conversation, inform Mr. Patton that said wires were charged with 22,000 volts of electricity? Answer. Yes.

"Did M. A. E. Patton on March 20th, 1914, preceding the day of his death, while between the same transformers, receive a severe shock of electricity? Answer. No.

"Was M. A. E. Patton, on March 21st, 1914, and at the time of the accident, in full control of his powers of locomotion? Answer. No.

"Was the deceased, M. A. E. Patton, in full possession of all his mental faculties, unimpaired, on March 21st, 1914, and at and immediately prior to the accident on that date? Answer. Yes."

The plaintiff filed a motion for a new trial and argues that because of the special finding that the deceased was not in full

control of his powers of locomotion the plaintiff's right to recover is established. In our opinion, the findings can only be construed to mean that the jury concluded defendant was guilty of negligence in not properly protecting its wires, but that the negligence of the deceased contributed to his death. Had the verdict been for the plaintiff and the trial court had approved it, this court would not have disturbed the judgment. But the plaintiff failed to establish to the satisfaction of the jury that the accident was caused solely by the negligence of the defendant.

We are unable to discover any errors in the admission of evidence, in the giving or refusing of instructions, nor in denying a new trial. The judgment is affirmed.